McBRIDE, Judge.
This is a workmen’s compensation suit. The plaintiff, a woman 42 years old, appealed from a judgment dismissing her demand asserted against her former employer and its compensation liability carrier for maximum statutory compensation, plus medical expenses, for total and permanent disability allegedly sustained in an accident on November 2, 1954.
The sole defense in the case is a denial by defendants that plaintiff had sustained any personal injury by reason of accident arising out of or in the course of her employment, *102 and it is averred that plaintiff’s physical ailments were in no way attributable to her employment.
Plaintiff’s duties at the Chase Bag Company plant entailed the operation of three spinning frames. She was required to load spools of paper to the machine, and claims that on the day in question an empty spool, which was stored on a shelf on the machine, fell striking her on the right breast, causing the injury of which she complains. The record is clear that it was not at all unusual for spools to fall and strike operators, but, on the contrary, the falling of spools seemed to have been a daily occurrence and plaintiff had been struck on many occasions.
Plaintiff produced as an eyewitness to the accident a co-worker named William A. Walter, who states that he was standing a few feet removed from the machine at' which plaintiff worked and that he saw the spool fall and strike her on November 2, 1954.
Plaintiff worked the remainder of the day but insists she left the plant in the evening feeling ill and that it was necessary that she consult Dr. W. R. Strange, a general practitioner, the next day.
'There is no question that Dr. Strange found an abscess on plaintiff’s breast, which he incised and drained at the Baptist Hospital. This surgical procedure took place on November 6, 1954. It also appears that Dr. Strange re-incised the wound on December 4, 1954. Plaintiff then left New Orleans, and on April 21, 1955, visited Dr. Ardly Hebert, a surgeon, at Abbeville, Louisiana, who on that date removed a mass from her breast. On June 27, 1955, Dr. Hebert made a more radical excision of the area and removed still another mass. According to Dr. Hebert he last saw plaintiff on April 23, 1956, at which time he discharged her as completely cured. Notwithstanding, plaintiff declares she continues to suffer pain and is disabled from doing work of any reasonable character.
The defendants, in support of their denial that plaintiff sustained personal injury by accident arising out of or in the course of her employment with Chase Bag Company, introduced in evidence a written statement signed by plaintiff which had been taken from her by an investigator, named Buchanan, on behalf of the defendant liability carrier. She admits that the investigator wrote the statement and that she signed it at his request. Plaintiff purportedly stated to the investigator that she first noticed pain in her right breast in January of 1954, and that during May of that year a lump formed which was very painful and inhibited her from sleeping on her stomach. She states that she first saw Dr. Strange, her regular doctor, in May and that after his examination, Dr. Strange advised her to be operated on at once. But plaintiff states she was frightened by the thought of an operation and did not go back to the doctor until November 3, 1954, which was the day after the accident under investigation. The statement goes on to say that her right breast bothered plaintiff all summer, and on November 6, 1954, Dr. Strange cut into the breast at the Baptist Hospital. It further appears that in her statement plaintiff admitted that: “I have had spools fall off the machine and hit me on the breast every day but never any one time was it any worse than any other * *
Defendants produced a witness, Leonard Krupp, the plant superintendent of the Chase Bag Company, who testified that in about May 1954, plaintiff told him that she desired to take some time off because she had to consult a doctor. The witness did not know the nature of plaintiff’s physical ailments, but stated that plaintiff later advised him that she would wait until her summer vacation before being operated upon.
The trial judge concluded, after hearing the evidence, that any malady from which the plaintiff was suffering was not caused by the accident she alleges took place on *103 November 2, 1954. Appellant contends that the court erred in rejecting the statements of plaintiff and Walter to the effect that an accident had happened and by not accepting Dr. Strange’s testimony which counsel argues completely bears out the fact that an accident had caused the abscess in plaintiff’s breast.
There are some circumstances which cast suspicion on the statements of plaintiff and her witness as to the happening of an accident on the day in question. Walter states he saw the spool fall and that all plaintiff did was to remark that “a spool hit her.” She made no complaint of having suffered any injury and continued on with her work for the rest of the day. Her story is that when leaving the plant that evening she felt badly, saw Dr. Strange the next day, and never returned to work thereafter. These statements appear somewhat odd. One would think that if the spool struck her and caused an injury, plaintiff could have been reasonably expected to make complaint to Walter who stood near her, and it is also not unreasonable to assume also that she would have reported the injury to someone connected with the plant. No report of an accident was made until Dr. Strange called the plant superintendent on behalf of plaintiff the next day. Furthermore, Walter’s statement that he saw the spool fall appears to be as equally unreliable as plaintiff’s testimony. He stated that plaintiff worked for about two months after the spool-falling incident which is not in keeping with the facts, as it is conceded plaintiff did not work for the Chase Bag Company after November 2,1954.
Plaintiff’s counsel attacks the contents of the statement written by the investigator, Buchanan, and argues that Buchanan was guilty of writing down information which did not emanate from plaintiff and caused her to sign the statement as her own knowing that false information appeared in it. The attack on the statement which plaintiff admits she signed must fall, for nowhere in her testimony does plaintiff disavow any of the recitals therein, nor does she contend that Buchanan took advantage of her by writing down information she had not related to him. The best we can glean from her testimony is that she had a conversation with Buchanan but does not remember what she told him.
Some argument is made also that an unfavorable inference should be drawn against the defendants because of their failure to produce Buchanan as a witness in order that plaintiff might have cross-examined him. There is no merit at all to this contention. There was no necessity that defendants call Buchanan as a witness, and this for the simple reason that the plaintiff had never attacked the authenticity of the recitals. Under the circumstances, Buchanan’s nonproduction as a witness is readily understandable.
Dr. Strange stated that he at no time prior to November 3, 1954, treated plaintiff for any condition existing in her breast, and it is argued that this testimony refutes the written statement. However, Dr. Strange admits that he did not have all of his records in court with him, and we believe that there is a likly possibility that he had treated the plaintiff before for a breast condition, as we notice she never once denied that Dr. Strange had treated her for that condition and could only say “I don’t remember.”
Dr. Strange, who saw the plaintiff on the day following the alleged date of the accident, was the only one of the medical witnesses who was in a position to tell whether the abscess in plaintiff’s breast was caused by trauma, but we notice that nowhere does he even intimate that there was a causal connection between the alleged accident and the condition he found existing in plaintiff. No question was propounded to Dr. Strange bearing on this point. The other physicians testifying in the case had not seen plaintiff until some months after the alleged accident and were not able to state whether the condition of which she complained was the result of trauma. Drs. *104 Hebert and Thomas, the latter appearing as a witness for defendants, stated it is possible for trauma to cause an abscess, but that they could not determine from their examinations the causation of plaintiffs condition. However, Dr. McQuitty, who appeared for defendants, testified that a blow such as plaintiff described having received from the falling spool could not possibly cause an abscess in so short a time as one day.
 We think the trial judge correctly decided the case. We, like he, believe that plaintiff’s trouble predated the accident and that the falling of a spool on November 2, 1954, if one did fall upon her, had nothing to do with the physical ailments of which she complains. The plaintiff in a workmen’s compensation suit must prove his case by a preponderance of the evidence just as the plaintiff in any other is required to do, and our opinion is that the plaintiff here has failed to successfully carry such burden.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.